### WELTY v. REED.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1916.)

#### No. 4057.

INDIANS ⬤⟿15(1)—ALLOTMENTS—RESTRICTIONS ON ALIENATION—PATENTS TO HEIRS.

    Where an allotment was made to a Creek Indian in his lifetime, but he died before the patent was issued, and before the effective date of the Original Agreement, his heirs, under the patent issued to them, took only a provisional surface right, which they could convey, and the allottee had not received an allotment, as contemplated by the Original Creek Agreement (Act March 1, 1901, c. 676, § 7, 31 Stat. 863) or Act June 30, 1902, c. 1323, § 16, 32 Stat. 503, so as to be subject to the restrictions on alienation imposed by those sections.

    [Ed. Note.—For other cases, see Indians, Cent. Dig. § 37; Dec. Dig. ⬤⟿15(1).]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit by Andrew Reed against Edwin A. Welty to quiet title. Decree for complainant, and defendant appeals. Affirmed.

See, also, 219 Fed. 864, 135 C. C. A. 534.

George S. Ramsey, Edgar A. De Meules, Malcolm E. Rosser, and S. H. Lattimore, all of Muskogee, Okl., for appellant.

Lewis C. Lawson, of Holdenville, Okl., and Joseph C. Stone, of Muskogee, Okl., for appellee.

A. N. Frost, of Lawrence, Mass., and Robert Hardison, Sp. Asst. Attys. Gen., amici curiæ.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

ADAMS, Circuit Judge. This was a suit in equity, brought by the appellee, Reed, against Welty, appellant, to quiet title to certain de-

scribed land situated in Okjuskee county, Okl. On July 26, 1904, Reed purchased the interest of London Knight and Ramsey Knight in and to the land in controversy. These grantors were full-blood Creek Indians, and constituted two of the heirs of Thomas Knight, deceased, who was likewise a full-blood Creek Indian and a member of the Creek Tribe of Indians, to whom in his lifetime, on May 18, 1900, an allotment of land had been made by the Commission to the Five Civilized Tribes. Afterwards, on April 6, 1901, Thomas Knight died. This was prior to the effective date of the Original Creek Agreement, June 25, 1901 (32 Stat. 1971). Thereafter a patent was duly issued to his heirs, who were his three children, London, Ramsey, and Robert Knight.

The interest of Robert Knight, who is an infant, is not involved in this controversy. On July 28, 1908, London Knight and his wife executed a deed purporting to convey an undivided one-third interest in the land to the defendant, Welty. This deed received the approval of the county court of Okjuskee county as provided by section 9 of the act of May 27, 1908 (35 Stat. 312, c. 199), and was duly recorded in the office of the registrar of deeds for that county; and this is the deed which Reed seeks to cancel as a cloud upon his title acquired by his deed, dated July 26, 1904, from London and Ramsey Knight.

Counsel for appellant, Welty, contend that the land was allotted on May 18, 1900, to a living citizen of the Creek Nation, Thomas Knight, within the meaning of section 7 of the Original Creek Agreement (Act March 1, 1901, c. 676, 31 Stat. 861) or section 16 of the Supplemental Creek Agreement (Act June 30, 1902, c. 1323, 32 Stat. 500). Section 7 of the Act of March 1, 1901, and section 16 of the Act of June 30, 1902, contain similar restrictions against alienation. They provide, in effect, that lands allotted to living citizens should be inalienable by the allottee or his heirs for a period of five years from the ratification of the Creek Agreement, except with the approval of the Secretary of the Interior.

Appellee Reed's contention is that notwithstanding the provisions of section 7 of the Original Creek Agreement, or section 16 of the Supplemental Creek Agreement, restricting the alienation for a period of five years from the ratification of the Creek Agreement in case an allotment is made to a living citizen, and notwithstanding the fact that Reed acquired his title before the restrictive period of five years had elapsed without securing the approval of the Secretary of the Interior thereto, nevertheless his title was good as against the subsequently acquired title of Welty, for the reason that the allotment made to Thomas Knight, the ancestor, was only a temporary or provisional allotment, conferring upon the ancestor merely the tribal title to the surface of the ground for and during his life only, and that upon his death his title, by virtue of that allotment, died with him; that the subsequent allotment and patent of the land to the heirs of Thomas Knight conferred upon them all the equitable title in and to the land, and that as a result the provisions of sections 7 and 16 of the Original and Supplemental Creek Agreements had no

application and constituted no restrictions upon the sale of their land by them; that, in point of law, Thomas Knight had not received an allotment in his own interest within the meaning of the Original and Supplemental Creek Agreements; that, although the conveyance by London Knight and his wife to Welty in 1908 received the approval of the county court of Okjuskee county, it conveyed nothing that had not already been conveyed by the grantor's (London Knight's) deed of July 26, 1904, to Reed, and therefore constituted a cloud upon Reed's title.

The one and only question involved in the present case is whether the heirs of Thomas Knight had power to alienate the allotment originally made in the name of their father (who died prior to the taking effect of the Original Creek Agreement), but which was subsequently confirmed by patent in them prior to August 8, 1907, which is the date of the expiration of the five-year period of restriction imposed by the Original and Supplemental Creek Agreements. In other words, do the restrictions of those agreements apply to a case where an allotment was made in the name of a father, who died prior to the Original Creek Agreement and before a patent was issued to him, whose heirs afterwards received the patent directly therefor?

This case was heard by this court at its December term, 1914, and a decision was reached reversing the judgment of the District Court and sustaining the contention of the defendant Welty. Welty v. Reed, 219 Fed. 864, 135 C. C. A. 534. Afterwards, the attention of the court being called to the decision of the Supreme Court in the case of Woodward v. De Graffenried, 238 U. S. 284, 35 Sup. Ct. 764, 59 L. Ed. 1310, which had not appeared prior to the decision of the present case by this court, we sustained a motion for a rehearing. The Woodward Case has now been carefully and critically considered, and in our opinion it presents a case altogether similar in its facts to the case now before us. In it the points now relied upon by opposing counsel in support of their respective contentions in this case were given exhaustive consideration by the Supreme Court, and that court held with the contention of the appellee that an allotment made to a Creek Indian in his lifetime, who died before the patent was issued, and whose heirs afterwards received a patent for the land, took only a provisional surface right, and that such allottee had not been placed in possession of an allotment, or had not "received an allotment," as contemplated by section 7 of the Original Creek Agreement, or section 16 of the Supplemental Creek Agreement, and that as a result the final allotment and patent made to the heirs of such allottee did not subject them to any of the restrictions against conveyance of their land found in these sections.

That case controls this one, and on its authority of the judgment of the District Court, granting the relief prayed for by Reed, must be affirmed.